## Commonwealth *ex rel.* Girard *versus* Sanson.

1. The Act of February 18th 1869, relating to interpreters, &c., in Philadelphia, does not repeal the Act of March 27th 1865, on the same subject.
2. The 3d section of Act of 1869, does not apply to the official interpreter appointed by the court when he comes to the stand to interpret in the ordinary course of his duty.
3. The Acts of 1865 and 1869, compared and distinguished, and the latter construed.

January 12th 1871. Before THOMPSON, C. J., AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

This case was a quo warranto issued, March 19th 1870, out of the Supreme Court, Eastern District, at the relation of John Fabricius Girard against Joseph Sanson to answer by what warrant since the 18th of February 1869 he had exercised, and was exercising the rights, &c., "of interpreter of foreign languages in Courts of Common Pleas, &c., &c., in Philadelphia, which the suggestion of the relator averred," were lawfully and exclusively vested in him by the commission of the governor of Pennsylvania, under the Act of Assembly of February 18th 1869.

Sanson pleaded that he was entitled to exercise the rights, &c., of interpreter of foreign languages in the said courts for five years from the 8th of February 1869, by appointment made by the Court of Common Pleas of Philadelphia, in pursuance of the Act of Assembly of March 27th 1865.

The relator demurred to the plea.

The following are the Acts of Assembly referred to in the pleadings :—

Act of March 27th 1865, "authorizing the appointment of interpreters of foreign languages, in the city of Philadelphia."

The governor of this Commonwealth is hereby authorized to appoint and commission a competent person to act as interpreter of the various foreign languages in the city of Philadelphia, whose term of office shall be five years ; the duty of said interpreter shall

[Commonwealth *v.* Sanson.]

be to make verbal or written translations of foreign invoices, manifests, bills of lading or any other foreign documents whatsoever, in the city of Philadelphia; which said verbal or written translations shall be made, or duly certified, signed and sealed, by the said interpreter, whose fees shall not exceed two dollars for each certificate, and fifty cents for each written page of translation; and the Court of Common Pleas for the city and county of Philadelphia, are hereby authorized to appoint a competent person to act as interpreter of foreign languages for the said court, for the term of five years, and from time to time, thereafter, as often as a vacancy shall occur in said office, to fill the same: Pamph. L. 795, Purd. 1396, pl. 1.

Act of February 18th 1869, "To establish the office of interpreter and translator of foreign languages for the city of Philadelphia."

Sect. 1. The governor shall have power to appoint an officer in and for the county of Philadelphia, who shall be called interpreter and translator of foreign languages, and to fill said office by appointment where the same shall be vacant; the appointee shall hold his office for a term of three years, and be eligible for reappointment; he shall have a seal of office, and may appoint such number of clerks and assistants as he may deem necessary.

Sect. 2. All translations of any papers, instruments of writing or document of any kind in a foreign language, made or certified by said officer to be correct, under his hand and seal of office, and attached to the original, shall be received as evidence without further proof or authentication in any court of justice of this Commonwealth, and shall have the same effect, for that purpose, as any competent admissible oral or written translation, made and sworn to, in a court of justice, by any competent sworn interpreter or expert, would have.

Sect. 3. No witness shall be produced, sworn, or examined in any court of justice of said city of Philadelphia, to interpret the testimony of any witness who testifies in a foreign language, or to translate any written paper, instrument of writing or document in a foreign language, who shall not produce the certificate of said officer as to his fitness and competency for that purpose, bearing date of the day of his examination.

Sect. 4. The fees of such officer shall be regulated from time to time, by the judges of the Court of Common Pleas of the city and county of Philadelphia: Pamph. L. 198, Purd. 1572.

*M. Arnold, Jr.*, for relator.—A subsequent affirmative statute repeals, by implication, a former one on the same matter, if it introduce a new rule, and be intended as a substitute without express words repealing it: Johnston's Estate, 9 Casey 511. If there be negative words in a later statute or the matter necessarily implies a negative, an earlier statute upon the same subject-matter

[Commonwealth *v.* Sanson.]

will be thereby repealed: Bank *v.* Commonwealth, 10 Barr 442; Bartlett *v.* King, 12 Mass. 537; Commonwealth *v.* Cromley, 1 Ashmead 179; Street *v.* Commonwealth, 6 W. & S. 209; Daviess *v.* Fairbairn, 3 How. 636; Brown *v.* County Commissioners, 9 Harris 37. In the absence of a regularly appointed officer, the courts may order an interpreter to be sworn and interpret: Case of Norberg, 4 Mass. 81.

*G. Remak,* for respondent.

The opinion of the court was delivered, February 9th 1871, by Agnew, J.—The Act of March 27th 1865, Pamph. L. 795, authorizing the appointment of interpreters of foreign languages, in the city of Philadelphia, contains two distinct and independent provisions. The first clause provides for the appointment by the governor of a competent interpreter, whose duty it is to make verbal or written translations of foreign invoices, manifests and other documents, which translation shall be duly certified. The second clause authorizes the Court of Common Pleas to appoint a competent interpreter of foreign languages for the court, and from time to time to fill vacancies as they occur. These interpreters thus derive their appointment from different sources and exercise different functions.

The Act of 18th February 1869, Pamph. L. 198, supplies so much only of the Act of 1865, as provided for the establishment of the office of interpreter of foreign languages for the city. This is obvious from several considerations, of which the first that may be stated is the title of the acts. That of 1865 relates to the appointment of interpreters (in the plural) in the city of Philadelphia, while that of 1869 is to establish the office of interpreter (in the singular) for the city of Philadelphia. The body of the Act of 1869 relates solely to the office of interpreter for the city only, making no reference whatever to the interpreter for the court. He is (as before) to be appointed by the governor, to have a seal of office, and to appoint clerks and assistants. His duties are confined to making translations of written papers and documents, to be certified when required under his seal of office, and made evidence in courts of justice; but not a word is said as to his duty to translate orally in the courts. In no part of the Act of 1869 is an intention expressed to repeal that part of the Act of 1865, authorizing the appointment of a court interpreter. So far there is not a shadow of inconsistency between the Act of 1869 and the second clause of the Act of 1865, or an intimation of an intention to repeal the latter.

The argument for an implied repeal is drawn from the 3d section of the Act of 1869, in these words: "That no *witness* shall be produced, sworn or examined, in any court of justice of said

city of Philadelphia, to interpret the testimony of any witness who testifies in a foreign language, or to translate any written paper, instrument of writing or document in a foreign language, who shall not produce the certificate of said officer as to his fitness and competency for that purpose, bearing date of the day of his examination." If we take this section literally, it does not apply to an *official* interpreter who is examined and sworn upon his entering into the office to perform the duties faithfully, but only to an interpreting *witness* called to the stand *pro hac vice*, and then sworn and examined. To give it a wider scope and apply it to the official interpreter of the court every time he came to the stand to interpret, would produce consequences so monstrous and destructive of the due administration of justice, as would cause it to infringe directly on the bill of rights declaring that "the courts shall be open" and "right and justice administered without *sale, denial* or *delay.*" Its effect would be that no witness speaking a foreign language could possibly be examined until the parties have called on the city interpreter and paid him for a certificate; a sale of justice totally uncalled for and unnecessary. But the *denial* and *delay* of justice in order to bring in the city officials are still worse. What is to be done if the city interpreter be absent on business, or out of the state, or on a bed of sickness, and cannot be found, or is unable to give his certificate of the fitness of the interpreting witness," "bearing date the day of his examination." Or how will it be if the city interpreter cannot speak the language of the witness to be examined? It is not presumable any one can be found able to interpret in all languages. Must cases be postponed and delayed, and jurors and witnesses dismissed in the midst of a trial, until the certificate of the city interpreter can be procured? A trial once begun might never end by reason of the absence or inability of the city official to certify on the day of the examination. Courts of justice cannot be balked by such legislation. The legislature never could have intended consequences so monstrous and injurious. We say, therefore, that the 3d section of the Act of 1869 does not apply to the official interpreter appointed by the court when he comes to the stand to interpret in the ordinary course of his duty as interpreter. The utmost applicability it possibly might have to him is when he appears to be sworn and examined in order to be inducted into office, and even this we do not decide.

This 3d section must be the product of some private scheme never understood or intended by the legislators to be adopted, and ought to be forthwith repealed. It is sufficient for our present purpose, however, to say that there is nothing in the 3d section of the Act of 1869, so inconsistent with the second clause of the Act of 1865, as to imply its repeal. The court, therefore, gives judgment for the defendant upon the demurrer to his plea, and orders

[Commonwealth *v.* Sanson.]

that he be dismissed and discharged from the premises alleged against him, and also that he recover his legal costs of John Fabricius Girard, the relator, to be levied by execution as in cases of debt.